**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **CARL D. HAYES** | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. RWT 06-2824 |
| **HOLY CROSS HOSPITAL OF SILVER SPRING, INC.** | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

This case arises out of the nonpayment of bills associated with the Plaintiff's wife's stay at the hospital owned and operated by Defendant, Holy Cross Hospital of Silver Spring, Inc. ("the Hospital"). Plaintiff contends that substandard conditions at the Hospital eliminated his obligation to pay the outstanding amount on his account and that once he informed the Hospital of this rationale, it should not have referred his account for collection and should not have reported his account status to the three credit reporting agencies. Following Plaintiff's payment in full of his account, Plaintiff alleges that the Hospital refused to delete Plaintiff's account from Plaintiff's credit report. Plaintiff contends that the Hospital's actions have violated his rights under the Fair Credit Billing Act and the Federal Credit Reporting Act.

The Hospital has filed a Motion for Summary Judgment. Because there are no genuine issues of material fact and the Hospital is entitled to judgment as a matter of law on the statutory claims, its Motion for Summary Judgment will be granted.

## I. PROCEDURAL HISTORY

Plaintiff filed his original *pro se* complaint on October 27, 2006 alleging various violations of the Fair Credit Billing Act[1] and the Federal Credit Reporting Act[2]. After discovery, Plaintiff filed a Motion for Leave to File Amended Complaint, which the Court granted on August 18, 2007. Before the Court is the Hospital's Motion for Summary Judgment on the four counts contained in Plaintiff's Amended Complaint.

## II. FACTUAL BACKGROUND

Plaintiff's wife, Monica Hayes, was a patient at the Hospital from April 2, 2005 to April 6, 2005.[3] Due to construction at the Hospital, Mrs. Hayes's room did not have hot water for the duration of her stay and her intravenous ("IV") pump had not been properly sterilized initially. The Hospital provided all patients with notice of the problems resulting from the construction.

After Plaintiff's health insurance carrier paid its share of the charges, the Hospital billed Plaintiff for the remaining balance due of $1,014.28. The Hospital mailed bills to Plaintiff on May 26, 2005, June 16, 2005, and July 7, 2005. Plaintiff alleges that he did not receive the first two bills, but only received the third.

In response to the third bill, Plaintiff mailed a letter on August 18, 2005, to the Hospital at its bank lock box address, where all payments were received, disputing the charges and requesting that the Hospital credit the entire amount of the outstanding balance on Plaintiff's account because of the lack of hot water and the improperly sanitized IV pump. Though Plaintiff mailed this letter

---

[1] 15 U.S.C § 1666.

[2] 15 U.S.C. § 1681 *et. seq.*

[3] The facts cited by the Court are drawn from the facts stipulated by both parties for the purpose of the instant motion except where cited otherwise. *See* Def. Mem. Ex. 2; Pl. Mem. Ex. 1.

in August 2005, the Hospital did not receive it until Plaintiff faxed a copy to it in March 2006.

After the Hospital did not receive payment after sending the third bill in July 2005, it referred Plaintiff's account to Computer Credit, Inc. ("CCI") in an attempt to obtain payment. After receiving no payment or response to the three additional bills CCI sent to Plaintiff in July and August, CCI returned Plaintiff's account to the Hospital which, in turn, assigned the account to a collection agency, Nationwide Credit Corp. ("Nationwide"), on approximately October 6, 2005.

Nationwide sent three additional bills to Plaintiff on October 11, 2005, December 31, 2005, and January 27, 2006. Plaintiff alleges that he did not receive either of the first two bills from Nationwide; he claims that he received only the final January 27 bill. On or about January 12, 2006, Nationwide reported that Plaintiff's account had an outstanding balance of $1,014.28, to the three major consumer reporting agencies: Equifax, Experian, and Trans Union. On January 22, 2006, Plaintiff received a notice from Equifax that Nationwide had listed Plaintiff's account on his credit report as a collection account, which meant that the account was delinquent or past due.

Plaintiff called Nationwide on January 23, 2006 and February 1, 2006 to notify it that there was an unresolved billing dispute regarding his account. Compl. ¶¶ 22-27. Nationwide referred Plaintiff to the Hospital. Compl. ¶ 27.

On February 3, 2006, Plaintiff alleges that he sent a letter to the Hospital's legal department that advised it of his belief that their unresolved billing dispute was affecting his account, offered to pay the bill in full if the Hospital agreed to delete his account from his credit report, and enclosed payment in full for the outstanding balance on his account. On or about February 16, 2006, the payments were posted to Plaintiff's account and another delinquent account of Plaintiff's (which is not at issue in this case). According to the Hospital, its legal department never received the letter, and Plaintiff's payments were processed without complying with the conditions stated in Plaintiff's

3

letter. The next day, the Hospital reported Plaintiff's account as paid in full to Nationwide who then reported that status to Equifax, Experian, and Trans Union.

On or about February 24, 2006, the Hospital received a letter that included a copy of the letter Plaintiff had sent to its legal department, copies of Plaintiff's deposited checks, and copies of three letters all dated February 20, 2006 that Plaintiff had sent to Equifax, Experian, and Trans Union, which disputed the accuracy of the status of Plaintiff's account on his credit report.

On March 3, 2006, Julie Keese, an employee of the Hospital, addressed a letter to Plaintiff's wife to respond to Plaintiff's concerns. A subsequent mail correspondence continued between Ms. Keese and Plaintiff discussing the status of the account. After Plaintiff stated his intent to initiate legal proceedings against the Hospital, Ms. Keese referred him to the Hospital's legal department.

In response to Plaintiff's letters, Equifax, Experian, and Trans Union each sent letters to Nationwide inquiring about the accuracy of Plaintiff's account in February and March 2006. Nationwide responded to each of these letters stating that the account was being properly reported. The same procedure was followed on at least two subsequent occasions when Plaintiff further disputed the accuracy of his credit report with all three of the consumer reporting agencies.

Nationwide sent Plaintiff a letter dated June 6, 2006 stating that it had requested that the Hospital delete the negative information from Plaintiff's credit report. Nationwide then sent Plaintiff a letter dated June 19, 2006 stating that the Hospital had denied his request.

### III.   STANDARD OF REVIEW

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that

"might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248-49.

However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-24). When ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (emphasis added).

## IV.  ANALYSIS

### 1.  Fair Credit Billing Act

In his first count, Plaintiff's alleges that the Hospital violated the Fair Credit Billing Act ("FCBA") by assigning his account to Nationwide for collection when there was a billing error. 15 U.S.C. § 1666 (2008). Plaintiff asserts that because his wife's hospital room did not meet the Hospital's standards, he should have received a credit and therefore his bill was erroneous.

The Hospital correctly notes that the FCBA does not apply to it because it is not a "creditor" as defined in § 1602(f). 15 U.S.C. § 1602(f). Section 1602(f) defines a creditor as a person who "regularly extends . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required." *Id.* The term "credit" is defined as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and

5

defer its payment." *Id*. § 1602(e).

The parties agree, as set forth in paragraph d) of the undisputed material facts in the Hospital's motion, that for the purpose of the Hospital's motion it does not regularly extend credit to its patients payable by agreement in more than four installments and that payment for services is due upon receipt of a bill. Def. Mem. Ex. 2 ¶ 5; Pl. Mem. Ex. 1 ¶ 5. The fact that the Hospital does not do so renders the FCBA inapplicable to it. *See, e.g., Bright v. Ball Mem'l Hosp. Ass'n, Inc.*, 616 F.2d 328, 339 (7th Cir. 1980) (holding that hospital was not covered under the FCBA even though hospital permitted its patients to defer payment in installments because hospital charged late fees only, not finance charges as required under the FCBA); *Finnegan v. University of Rochester Medical Center*, 21 F. Supp. 2d 223, 227 (W.D.N.Y. 1998) (holding that the legislative history of the FCBA indicated that Congress did not intend it to apply to hospitals).[4] Therefore, Defendant is entitled to judgment as a matter of law on the first count.

## 2. Fair Credit Reporting Act

The next three counts of Plaintiff's Amended Complaint allege various violations of the Fair Credit Reporting Act based upon (1) the Hospital's request that Nationwide report Plaintiff's account as a collection account to the three credit reporting agencies; (2) Nationwide's subsequent reporting of Plaintiff's account to the three credit reporting agencies; and (3) the Hospital's willful noncompliance with the FCRA.

First, Plaintiff alleges that the Hospital violated the FCRA by directing Nationwide to report

---

[4] Plaintiff's reliance on three state cases that hold that the hospital-patient relationship is a creditor-debtor relationship is misguided because those cases do not implicate the FCBA or any other financial regulation; rather those cases concerned the awarding of attorneys fees when a hospital places a lien on a court award to pay for services rendered. *See Trevino v. HHL Fin. Services, Inc.*, 945 P.2d 1345, 1348-49 (Colo. 1997); *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985); *Maynard v. Parker*, 369 N.E.2d 352, 355 (Ill. App. Ct. 1977).

his account as a collection account to the three credit reporting agencies. Am. Compl. ¶¶ 75-81. The Hospital is entitled to judgment as a matter of law on this claim because there is no private right of action to enforce this provision of the FCRA. *See* § 1681s-2(d) (limiting the enforcement of a furnisher's duty to provide accurate information to certain state and federal governmental entities).[5]

However, even if the Court were to reach the merits, Plaintiff's contention that a genuine issue of material fact exists regarding whether Plaintiff was obligated to pay for his wife's hospital stay is unsupported by any evidence in the record. *See* Pl.'s Opp. at 7. Plaintiff has adduced no facts in the record concerning the absence of an obligation to pay the bill other than his general statements in the amended complaint – none of which suffices to carry his burden of opposing summary judgment. *See Felty,* 818 F.2d at 1128 (holding that party may not rely solely upon "assertions in the pleadings" but must produce facts supporting its contentions).

Furthermore, there is no evidence in the record that Plaintiff complied with his duty under the FCBA to provide the Hospital with the required notice of his billing dispute.[6] The FCBA provides that the creditor must receive written notice of a billing dispute from the obligor within 60 days of the creditor sending the obligor an account statement. *See* 15 U.S.C. § 1666(a). There is no dispute that (1) Plaintiff did not receive a statement, invoice, or bill from the Hospital until July 2005, and (2) even though Plaintiff mailed his written notice of the billing dispute in August 2005, the Hospital did not receive the letter until Plaintiff faxed it on or about March 8, 2006, which exceeds the FCBA's 60 day time limit. *Id.* Plaintiff's failure to comply with the 60 day time limit

---

[5]Moreover, the account was properly referred to Nationwide as a collection account in January 2006 when the Hospital and Nationwide were not aware of Plaintiff's disagreement over his bill.

[6]The Court assumes, without deciding, that the FCBA applies to the Hospital in terms of the billing dispute for purposes of demonstrating that Plaintiff's claim fails both as a matter of fact and as a matter of law under the FCRA. As discussed *supra,* the FCBA does not apply to the Hospital as it is not a "creditor" within the meaning of the Act.

for actual notice renders the obligations in the FCBA inapplicable to the Hospital. *See* § 1666(a)(A)-(B). Because the FCBA did not apply to the Hospital, it could not have violated its terms, and thus could not have violated the reporting requirements under the FCRA.

Second, Plaintiff alleges that Nationwide violated the FCRA by not reporting to the three credit reporting agencies that Plaintiff disputed the status of his account. Plaintiff contends that after he sent letters to Equifax and Trans Union and those two credit reporting agencies contacted Nationwide to verify the accuracy of Plaintiff's account status, Nationwide violated the FCRA by not reporting that Plaintiff's account was indeed disputed. Am. Compl. ¶¶ 82-99. The FCRA provides that "[i]f the . . . accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." § 1681s-2(b).

The Hospital is also entitled to judgment as a matter of law on this claim because there is no private right of action to enforce this provision of the FCRA. *See* § 1681s-2(d). In any event, Plaintiff's claim also fails for lack of evidentiary support in the record. Although Plaintiff has asserted in his amended complaint that Nationwide did not report his account as being disputed to Equifax and Trans Union, the record is devoid of any evidence of the information contained in Plaintiff's credit report (much less Plaintiff's credit report with the credit reporting agencies in question) or any correspondence between Nationwide and Equifax and Trans Union that form the factual basis for this claim. The facts agreed upon by the parties, in fact, belie Plaintiff's assertions; Plaintiff concedes that he "does not have a copy of any of his consumer credit reports for the time period at issue in this case." Parties' Agreed Undisputed Facts ¶ 49. Specifically, the parties agree that although Plaintiff communicated to the three credit reporting agencies that he believed that the

account should not have been reported at all, should have been deleted, and was either not his account or had been paid – Plaintiff did not communicate that the reported account should have been noted as "disputed." *Id.* ¶¶ 32, 33, 35, 36, 38, 39, 41, 42, 44, and 45. Further, the parties agree that Nationwide was never advised by the credit reporting agencies that Plaintiff was contending that his account should have been noted as "disputed." *Id.* ¶ 48.

In the absence of any evidence in the record that Plaintiff actually provided Nationwide and the three credit reporting agencies with notice that he wished his account to be noted as "disputed," Nationwide was not required to report the account as "disputed." *See* § 1681s-2(b)(1); *see also Fireison v. Equifax, Inc.*, No. WDQ-06-279, 2006 WL 1134205, at *1 (D. Md. Apr. 25, 2006) (dismissing a complaint against a furnisher of information under section 1681s-2(b) because the consumer, not a credit reporting agency, notified the furnisher of the dispute). As Plaintiff has failed to produce proof of an essential element underlying this claim, there is "no genuine issue as to any material fact" that would preclude the entry of summary judgment against Plaintiff. *See Celotex Corp.,* 477 U.S. at 323.

Third, Plaintiff alleges that the Hospital violated the FCRA by willful noncompliance through its failure to delete the account from Plaintiff's credit file. Am. Compl. ¶¶ 100-05. As discussed in greater detail *supra*, Plaintiff has failed to produce any evidence of what was actually contained in his credit report and thus has failed to satisfy his burden under summary judgment that the Hospital violated FCRA, which *a fortiori* means that Plaintiff has failed to satisfy his burden of proving that the Hospital *willfully* did not comply with FCRA. In his Opposition, Plaintiff appears to add a claim that the Hospital failed to "conduct a reasonable investigation to ensure that [his] account was being reported accurately and completely." *See* Pl.'s Opp. at 15. This claim also fails because Plaintiff has failed to produce any evidence in the record that the Hospital's investigation

9

was not reasonable. The FCRA provides that the furnisher of the purported inaccurate information must conduct investigation regarding disputed information, review all relevant information provided by the consumer reporting agency, and report the results to the consumer reporting agency). § 1681s-2(b)(1). The Fourth Circuit has held that the investigation must be "a *reasonable* investigation of their records to determine whether the disputed information can be verified." *Johnson v. MBNA Am. Bank*, 357 F.3d 426, 431 (4th Cir. 2004) (emphasis added).

Here, there is no evidence to prove that once the Hospital and Nationwide became aware of the dispute from the consumer reporting agencies, their investigations were less than reasonable. Rather, the parties agree that the Hospital's billing and legal departments corresponded with Plaintiff regarding their respective beliefs about the status of Plaintiff's account and that the billing department cashed Plaintiff's payments without knowledge of the conditions Plaintiff included in his letter. Parties' Agreed Undisputed Facts ¶¶ 24-29. Plaintiff's own exhibits concerning the correspondence between him and the Hospital support the reasonableness of the investigation undertaken and the explanations proffered as a result of Plaintiff's complaints. *See* Pl.'s Exs. J, N, P, R, & U. Upon notification by the three consumer reporting agencies of Plaintiff's dispute, Nationwide confirmed to the agencies that the information was in fact correct. There is no dispute that Plaintiff's wife stayed at the Hospital, that Plaintiff was responsible for the account, or about the amount charged. Plaintiff does not argue that amount was in error, but merely that he feels it should be adjusted because of the condition of his wife's room. The evidence shows that the Hospital explained its policy to Plaintiff in a letter dated March 3, 2006 and denied Plaintiff's request for a credit, ending the dispute. Plaintiff's disagreement with the Hospital's decision not to issue a credit does not mean that the Hospital has violated the FCRA. As such, the Hospital is entitled to judgment as a matter of law on Plaintiff's FCRA claim.

Finally, Plaintiff's claim for defamation arising out of credit matters is governed by section 1681h(e). *Beuster v. Equifax Info. Servs.*, 435 F. Supp. 2d 471, 479 (D. Md. 2006). In order to make a case for defamation under the statute, Plaintiff must prove that false information was "furnished with malice or willful intent to injure" Plaintiff. 15 U.S.C. § 1681h(e). "Malice," in the context of the FCRA, has been interpreted to mean that a person "published material while entertaining serious doubts as to the truth of the publication or with a high degree of awareness of probable falsity." *Beuster*, 435 F. Supp. 2d at 480. "Willful" has been interpreted in the context of the FCRA as meaning "knowingly and intentionally committ[ing] an act in conscious disregard for the rights of others." *Cadet v. Equifax Credit Servs.*, No. 05-CV-4843, 2008 WL 189873, at *5 (E.D.N.Y. Jan. 18, 2008).

Plaintiff clearly has not developed sufficient evidence to prove the level of culpability needed to sustain a claim of defamation under section 1681h(e). As the Court finds that Plaintiff has not proved that the Hospital and Nationwide did not conduct a reasonable investigation of Plaintiff's claim once notified by the consumer credit agencies, it cannot be said that the Hospital or Nationwide acted with malice or an intent to injure Plaintiff. Plaintiff has shown no reason why either party believed the information transmitted to the consumer reporting agencies was false. Furthermore, there is no proof that either party was acting "in conscious disregard for the rights" of Plaintiff. The Hospital is thus entitled to judgment as a matter of law on Plaintiff's defamation claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant, by separate order, Defendant's Motion for Summary Judgment on all four counts in Plaintiff's Amended Complaint.

September 23, 2008

                                  /s/                                  
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE
